# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

TYSON A. CIEPLUCH,

    Plaintiff,

      v.                        **Case No. _____**

WANTABLE, INC.,

    Defendant.

## COMPLAINT

## PRELIMINARY STATEMENT

This action is brought pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("the FMLA"), and the supplemental jurisdiction of this Court over Plaintiff's breach of employment contract claim pursuant to 28 U.S.C. § 1367. Defendant Wantable, Inc. ("Wantable" or the "Company") interfered with Plaintiff Tyson A. Ciepluch's ("Mr. Ciepluch") FMLA rights by: pressuring him to perform work during protected FMLA leave; unilaterally eliminating his contractual salary while he was on leave; threatening to permanently alter the terms of his employment as a condition of return; imposing an unlawful retroactive "key employee" designation during his leave; and filing a civil lawsuit against him that expressly relies upon his FMLA-protected and

FMLA-qualifying absences as the predicate for breach of contract and disgorgement claims. 29 U.S.C. § 2615(a)(1).

Wantable also retaliated against Mr. Ciepluch by terminating and/or constructively discharging him and filing a baseless civil lawsuit against him after he exercised his FMLA rights and opposed Wantable's unlawful conduct. 29 U.S.C. § 2615(a)(2). In addition, Wantable breached Mr. Ciepluch's Employment Agreement by terminating and/or constructively terminating his employment without Cause and failing and refusing to pay the severance compensation to which he is contractually entitled.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over Plaintiff's FMLA claims under 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a). This Court has supplemental jurisdiction over Plaintiff's breach of contract claim pursuant to 28 U.S.C. § 1367, as that claim is so related to the federal claims that it forms part of the same case or controversy.

2. The Eastern District of Wisconsin, Milwaukee Division, is the proper federal venue for this action pursuant to 28 U.S.C. § 1391. During all times material hereto, Wantable maintained its principal place of business at 909 S. Barclay Street, Milwaukee, Wisconsin, and the acts and omissions giving rise to this action occurred in Milwaukee County, Wisconsin.

**TRIAL BY JURY IS DEMANDED**

3. Mr. Ciepluch demands that his claims be tried to a jury of his peers.

**PARTIES**

4. Mr. Ciepluch is an adult male, born February 18, 1973, who resides at 2714 S. Superior Street, Milwaukee, Wisconsin 53207. At all relevant times, Mr. Ciepluch was an employee of Wantable as that term is defined pursuant to 29 U.S.C. § 2611(2).

5. Wantable, Inc. is a Wisconsin corporation with its principal place of business at 909 S. Barclay Street, Milwaukee, Wisconsin 53204. Wantable operates a personalized styling and e-commerce apparel business.

6. At all times relevant hereto, Wantable was and is an employer engaged in an industry affecting commerce and had 50 or more employees for each working day in each of twenty or more calendar weeks. At all relevant times herein, Wantable has been a covered employer under the FMLA pursuant to 29 U.S.C. § 2601, *et seq.*

**OPERATIVE FACTS**

**A.     Mr. Ciepluch's Employment, Background, and Employment Agreement.**

7. Mr. Ciepluch joined Wantable in March 2017 as an Operations Manager and was promoted over the course of his employment, serving as Chief Operations Officer from May 2019 through August 2025. Mr. Ciepluch reported directly to CEO Jalem Getz.

8. Prior to joining Wantable, Mr. Ciepluch practiced for more than a decade as a corporate attorney, including as a partner at Quarles & Brady LLP.

9. During his tenure, Wantable's annual revenue grew from approximately $20 million to over $100 million, and its workforce expanded from approximately 70 to 350 employees as of the time Mr. Ciepluch entered into his Employment Agreement in August 2025.

10. In a January 8, 2025 email to Mr. Ciepluch, CEO Getz expressly praised Mr. Ciepluch's performance and leadership, stating that Wantable "would not be here" without him, describing him as "the best partner I've ever had," and stating that they were "aligned on nearly all substantive business issues." This contemporaneous assessment by the ultimate decision-maker directly contradicts Wantable's subsequent characterization of Mr. Ciepluch's performance and intent.

11. On or about August 27, 2025, following direct negotiations between Mr. Getz and Mr. Ciepluch, Wantable willfully, knowingly, and voluntarily entered into a written Employment Agreement with Mr. Ciepluch (the "Agreement"), under which Mr. Ciepluch was employed as President & COO at an annual base salary of $500,000.

12. The Agreement provided for a term through December 31, 2028, subject to earlier termination, and included a severance provision under Section 7 entitling Mr. Ciepluch to twelve months of continued base salary ($500,000) in the event Wantable terminated his employment without Cause.

13. The Agreement expressly defines the circumstances under which Wantable may terminate Mr. Ciepluch for "Cause," requiring a good-faith finding of willful,

intentional, or grossly negligent conduct materially injuring the Company's interests, a felony or misdemeanor involving moral turpitude, fraud, theft, or dishonesty, or misappropriation. The Agreement contains no "Good Reason" or constructive discharge provision, but Wisconsin law recognizes constructive discharge as a form of termination that triggers contractual and statutory protections. Section 9.1 of the Agreement prohibits any amendment except by a writing executed by all parties.

**B.      Mr. Ciepluch's Disability and FMLA Leave.**

14.      Mr. Ciepluch suffers from anxiety and depression, which constitute a serious health condition within the meaning of the FMLA, 29 U.S.C. § 2611(11), a disability within the meaning of the Wisconsin Fair Employment Act, Wis. Stat. § 111.32(8), and a disability within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*

15.      Despite his disability, Mr. Ciepluch consistently performed the demanding duties of his executive role for many years without issue or accommodation.

16.      In or around June 2025, Mr. Ciepluch's condition worsened significantly as a result of sustained executive-level stress and mounting organizational pressures, including the fact the Company was in significant financial distress. He communicated his condition to Mr. Getz on multiple occasions during 2025. At one point during July 2025, Mr. Ciepluch told Mr. Getz that Mr. Ciepluch may need to take some time off to get a break from the stress after conclusion of the Company's financial audit for 2024. Mr.

Getz told Mr. Ciepluch that he would "much rather have Mr. Ciepluch take a month off than lose him entirely." Despite Mr. Getz saying this, Mr. Ciepluch was concerned that Mr. Getz would treat him negatively if he did take time off.

17. On October 27, 2025, Mr. Getz contacted Mr. Ciepluch after learning he was ill and unable to work that day. In that communication, Mr. Getz asked whether Mr. Ciepluch's absence was due to a physical illness or a mental health issue, stating that either was "just fine," but emphasizing that the Company needed to know "where things stand." Mr. Ciepluch responded by expressly disclosing that he was experiencing a serious mental health and sleep disorder preventing him from functioning at work, and that he had an upcoming medical appointment on October 29, 2025. Later that same day, Mr. Getz characterized Mr. Ciepluch's medically related absence as "terribly disruptive" and stated that the Company needed to "create a situation where I can run the company," rather than engaging in any dialogue regarding accommodation.

18. On November 3, 2025, Mr. Ciepluch submitted a formal FMLA application supported by a medical certification from his treating psychiatrist, Dr. Matthew Weinlander, M.D., of Milwaukee Psychiatry, SC, confirming a serious health condition with an incapacity period projected from October 27, 2025 through November 14, 2025. Wantable approved Mr. Ciepluch's FMLA leave. Wantable subsequently approved two extensions of that leave: a first extension through December 15, 2025, and a second

extension through January 14, 2026, each supported by updated medical certifications from Dr. Weinlander.

**C.      Wantable's Elimination of Mr. Ciepluch's Contractual Salary During Protected FMLA Leave.**

19.     On November 16, 2025, while Mr. Ciepluch was on approved FMLA leave, Mr. Getz required Mr. Ciepluch to participate in a video meeting before Mr. Ciepluch was allowed to return from three weeks of FMLA leave. At the outset of that meeting, after just a few minutes of discussion, Mr. Getz informed Mr. Ciepluch that he should not return from leave the next day as planned, that the Company had decided to proceed with a reduction in force, and that Mr. Ciepluch's name appeared on the proposed termination list.

20.     During that same meeting, Mr. Getz stated that there was "no money available to pay" Mr. Ciepluch a salary and stated that the Company would be replacing his $500,000 contractual base salary entirely with incentive-only compensation contingent on the Company achieving specific EBITDA performance thresholds which were far beyond what the Company had achieved in its history. The pay structure Mr. Getz outlined for Mr. Ciepluch was likely to result in zero pay for Mr. Ciepluch. Mr. Getz also disclosed plans to terminate more than 30 employees. Mr. Ciepluch was devastated to learn, while on approved medical leave, that his contractual salary was being eliminated and that he appeared on a termination list. Mr. Getz told Mr. Ciepluch that

Mr. Ciepluch needed to choose whether he was "in or out", meaning to work at Wantable with zero salary or no longer be with the Company.

21. Following the November 16 meeting, and in order to understand the change to his compensation, Mr. Ciepluch emailed Mr. Getz on November 17, 2025, requesting specific details regarding the incentive compensation plan that would replace his guaranteed base salary. Later that same day, Mr. Getz responded by email formalizing the zero-salary structure and outlining an incentive-only compensation structure tied to Company EBITDA targets that, under the stated 2026 business plan, offered no realistic assurance of payment approximating Mr. Ciepluch's contractual salary. The email from Mr. Getz reinforced that Mr. Ciepluch either had to accept the elimination of contractual salary or no longer be employed by the Company. Mr. Getz took no steps between November 16 and 18 to dispel Mr. Ciepluch's reasonable understanding that the Company was eliminating his salary in violation of his Employment Agreement and using such tactics to force his departure.

22. Wantable's unilateral elimination of Mr. Ciepluch's contractual base salary during his approved FMLA leave constitutes FMLA interference. The FMLA prohibits an employer from altering the terms and conditions of employment in response to an employee's exercise of FMLA rights. The salary elimination — communicated while Mr. Ciepluch was on medically approved leave for anxiety and depression — directly undermined the purpose of his leave and constitutes an adverse alteration of

employment terms in violation of 29 U.S.C. § 2615(a)(1). The change in compensation also constituted an anticipatory breach of the Employment Agreement, which could be modified only by a writing executed by all parties under Section 9.1.

**D. Mr. Ciepluch's November 19, 2025 Written Protest – Protected Activity.**

23. On the morning of November 19, 2025, Mr. Ciepluch sent Mr. Getz a detailed written email recounting the events of the November 16 meeting. In that email, Mr. Ciepluch stated that he had been scheduled to return from FMLA leave on November 17 but that during the November 16 meeting Mr. Getz had instructed him not to return until December 1. Mr. Ciepluch recounted that Mr. Getz had disclosed there was no salary available for his position, had shown him a termination list that included his name, and had stated Mr. Ciepluch would receive incentive-only compensation offering no assurance of payment. Mr. Ciepluch further stated that being told he would have zero salary upon return from FMLA leave was deeply distressing, particularly given his long tenure and recent medical leave for mental health treatment.

24. In that same November 19 email, Mr. Ciepluch expressly stated that if Wantable was unwilling to employ him under the terms of his existing Employment Agreement — which included a $500,000 annual salary — then Wantable was effectively terminating his employment and he was contractually entitled to severance. This written communication constitutes protected activity under both the FMLA and the Wisconsin Fair Employment Act.

25. Approximately two hours after Mr. Ciepluch's written protest email on November 19, 2025, while he remained on approved FMLA leave, Mr. Getz emailed Mr. Ciepluch an "Action plan today and tomorrow," directing him to: speak with senior employees regarding the termination of additional employees to "free up money" for Mr. Ciepluch's salary, including identifying approximately $350,000 in payroll reductions; review pending legal matters including a California class action and communications with outside counsel; and assist with reviewing non-GAAP financials and budgeting. Mr. Getz described the day as "delicate," emphasized urgency, framed the assignments as tasks needing attention "today," and concluded with "Thank you and welcome back." Significantly, in the same exchange Mr. Getz also mentioned that he had a 5:00 p.m. meeting with "Rachael — she is being laid off," demonstrating that active layoff decisions were already being made during Mr. Ciepluch's leave, not merely proposed as a condition of his return.

26. Later on November 19, 2025, Mr. Ciepluch texted Mr. Getz that he was not ready to return from FMLA leave and would be requesting more time from his treating physician. This request was made because of the adverse actions the Company had taken against Mr. Ciepluch that week which exacerbated his condition.

**E.      The November 30, 2025 "Fund Your Own Salary" Demand.**

27. On November 30, 2025, while Mr. Ciepluch was on protected FMLA leave, he participated in a video meeting with Mr. Getz to discuss his status.

28.     During that meeting, Mr. Getz conditioned Mr. Ciepluch's return on his agreement to personally identify and execute workforce terminations sufficient to fund his own compensation — and then personally explain to the terminated employees and remaining management team that the layoffs were necessary because of Mr. Ciepluch's salary. Mr. Getz said that Mr. Ciepluch would have to tell the remaining management team the reason they would have to work harder and may not receive salary raises is because Mr. Ciepluch was being selfish and insisting on a salary. Mr. Getz required that Mr. Ciepluch effectively serve as the public face and scapegoat for layoffs driven by Company financial decisions unrelated to his compensation. Mr. Getz also made false accusations that Mr. Ciepluch was responsible for various Company problems, and asserted that Mr. Ciepluch's reaction to the zero-salary structure demonstrated a lack of commitment.

29.     Mr. Ciepluch objected to this framing and expressly rejected any arrangement requiring him to misrepresent the reasons for employee terminations to the workforce. He also rejected the "zero-salary" or contingent compensation structure, which he reasonably understood as a de facto termination or punitive demotion imposed as a consequence of his protected medical leave.

30.     Mr. Getz responded by accusing Mr. Ciepluch of "only caring about himself" and stated that Mr. Ciepluch should thank Mr. Getz for "protecting his reputation" while he was on leave. Mr. Getz also stated that Mr. Ciepluch should feel

guilty for the burden placed on other employees during his absence. These statements were intended to demean and pressure Mr. Ciepluch for exercising his FMLA rights and reflect direct retaliatory animus.

31.     The conditioning of Mr. Ciepluch's return from FMLA leave on his agreement to perform inherently harmful and reputationally damaging acts — acts that would serve as false justification for Company-driven layoffs — constitutes FMLA interference. An employer may not impose conditions on the exercise of reinstatement rights that alter or penalize the employee for having taken protected leave. 29 C.F.R. § 825.220(a).

**F.     The November 30, 2025 "Homework" Email – Substantive Work Assignments During FMLA Leave.**

32.     Immediately following the November 30, 2025 video meeting, at 2:54 p.m. — while Mr. Ciepluch remained on approved FMLA leave — Mr. Getz emailed Mr. Ciepluch with the subject line "Homework." In that email, Mr. Getz initially set a 1:00 p.m. deadline for the following day, then subsequently changed the deadline to 9:00 a.m., thereby moving up the completion requirement by four hours. The email assigned the following executive-level tasks: (1) draft a proposed amendment to his own Employment Agreement; (2) obtain and provide a physician's "clear-to-work" letter identifying any medical restrictions; (3) review detailed financial budgets and an employee reduction list to identify additional cost savings necessary to reach a target EBITDA of 10%; and (4)

initiate the process of completing the Company's 2025 audit, including exploring staffing solutions under budget constraints.

33. The tasks assigned in the November 30 "Homework" email were not ministerial or administrative in nature. They involved executive-level decision-making, financial analysis, audit oversight, workforce reduction planning, and contract renegotiation. Requiring Mr. Ciepluch — while on approved FMLA leave for anxiety and depression — to draft an amendment to his own Employment Agreement, analyze layoff lists to fund his compensation, and manage an audit constitutes textbook FMLA interference. Courts routinely hold that requiring substantive work, performance deliverables, and deadlines during FMLA leave constitutes unlawful interference regardless of the employee's title or seniority.

34. The demand that Mr. Ciepluch draft a proposed amendment to his own Employment Agreement is particularly significant. The purpose of that assignment was to compel Mr. Ciepluch — during his medical leave, under deadline pressure, to accept a substantial reduction in his salary. This constitutes both FMLA interference and an effort to use the leverage of Mr. Ciepluch's protected leave status to extract a waiver of his contractual rights, in violation of both the FMLA and the Agreement's Section 9.1 amendment requirements.

**G.    Additional Interference – Pressure to Work and Hostile Communications During Leave.**

35.    On November 28, 2025, Mr. Getz emailed Mr. Ciepluch during his leave stating there was "no time to waste" and warning that the longer Mr. Ciepluch remained uninvolved, the more decisions would be made without his input, some of which could be "irreversible." Mr. Getz outlined multiple operational and financial issues requiring Mr. Ciepluch's attention, including leadership promotions, budget overruns of approximately $500,000 and additional expense reductions.

36.    On November 30, 2025, Mr. Getz further communicated to Mr. Ciepluch that unless he returned "immediately," Mr. Getz intended to elevate another employee to Vice President of Operations — a structural change that would materially alter Mr. Ciepluch's reporting relationships and organizational authority upon return from leave.

37.    On December 1, 2025, after Mr. Ciepluch again indicated he remained on FMLA leave and was not ready to return to work, Mr. Getz sent a text message stating: "I'm also done with your erratic behavior, accusing me of things you know nothing about. I have zero tolerance for your false accusations and will not dignify them with a response. Stop acting like a child and start acting like a leader." This message, directed at an employee on approved FMLA leave in direct response to his assertion of FMLA rights, constitutes FMLA interference and is direct evidence of retaliatory animus.

38.    On December 2, 2025, Mr. Getz sent Mr. Ciepluch an email approving a second extension of Mr. Ciepluch's FMLA leave through December 15, 2025. In that same

email, Mr. Getz stated, for the first time and without any prior warning, disciplinary action, or documentation, that Mr. Ciepluch had exhibited "increased anger and hostility" in recent interactions. This accusation was made contemporaneously with the approval of protected FMLA leave for anxiety and depression, with no prior disciplinary record, and without identifying any specific incident supporting the characterization. The timing and content of this post-hoc accusation reflect retaliatory animus, disability-based stereotyping, and pretext rather than any legitimate performance concern, and further illustrate Wantable's pattern of using Mr. Ciepluch's protected leave-related conduct as the basis for adverse characterizations.

## H.     Improper Retroactive "Key Employee" Designation.

39.     On December 8, 2025 — six weeks after Mr. Ciepluch commenced FMLA leave — Wantable issued a written letter purporting to designate him as a "key employee" under 29 U.S.C. § 2614(b) and simultaneously reserving the right to deny reinstatement if his return were deemed detrimental to the Company. The letter also retroactively designated his leave as FMLA leave commencing October 27, 2025.

40.     Wantable's retroactive key-employee designation is procedurally improper and independently violates the FMLA. Under 29 U.S.C. § 2614(b) and 29 C.F.R. §§ 825.217–825.219, the "key employee" exception is a narrow limitation on reinstatement rights that requires the employer to provide timely written notice of key-employee status *at the time leave is requested*, together with notice that reinstatement may be denied only if

returning the employee would cause "substantial and grievous economic injury." 29 C.F.R. § 825.219(a)–(b). Wantable provided no such notice at the time Mr. Ciepluch's leave commenced on October 27, 2025.

41. Mr. Ciepluch commenced his FMLA leave with the legitimate expectation — grounded in the FMLA and in his Employment Agreement — that reinstatement to his position at his contractual salary was guaranteed absent lawful termination for Cause. During the six weeks between the commencement of his leave and Wantable's December 8 letter, Mr. Ciepluch made employment and medical decisions in reliance on that expectation. Wantable's December 8 letter introduced, for the first time, a conditional threat of non-reinstatement that materially prejudiced those rights and expectations. Retroactive designation is prohibited where it alters the employee's rights or expectations. 29 C.F.R. § 825.300(d). This constitutes unlawful FMLA interference under 29 U.S.C. § 2615(a)(1).

42. Moreover, nothing in the FMLA or its implementing regulations permits an employer to use the "key employee" designation to alter or override the compensation obligations set forth in a written employment agreement. The key-employee exception is limited to the question of reinstatement rights; it has no bearing on Wantable's contractual obligation to pay Mr. Ciepluch his $500,000 base salary or the severance required under Section 7 of the Agreement.

**I. Americans with Disabilities Act and Age Discrimination in Employment Act – Reserved Claims Pending Administrative Exhaustion.**

43. Mr. Ciepluch's anxiety and depression also constitute a disability within the meaning of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"). Wantable's conduct as described herein — including its adverse treatment of Mr. Ciepluch because of his disability, its failure to engage in any interactive process regarding reasonable accommodation, its hostile and stigmatizing characterizations of his mental health condition and leave-related conduct, and its termination and/or constructive discharge of Mr. Ciepluch because of his disability and in retaliation for his exercise of protected rights — constitutes disability discrimination and retaliation in violation of the ADA, 42 U.S.C. §§ 12112 and 12203.

44. Mr. Ciepluch has filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC Case No. 26G202600784) and expressly reserves the right to amend this Complaint to assert ADA claims upon receipt of a Right to Sue letter from the EEOC. Nothing herein shall be construed as a waiver of any ADA claim, and the operative facts set forth above are incorporated by reference into any such future ADA claim.

**J. Wantable's Use of FMLA-Protected and FMLA-Qualifying Absences as Predicate for Civil Lawsuit Constitutes Additional FMLA Interference.**

45. On March 6, 2026, Mr. Ciepluch filed a Discrimination Complaint with the Wisconsin Department of Workforce Development, Equal Rights Division (ERD Case No.

CR202601205; EEOC Case No. 26G202600784), alleging that Wantable had discriminated against him on the basis of his disability — anxiety and depression — in violation of the Wisconsin Fair Employment Act, Wis. Stat. §§ 111.31–111.395, and had subjected him to termination and/or constructive discharge in retaliation for exercising his protected rights. The filing of that complaint constituted protected activity under the WFEA, the ADA, and the FMLA.

46. On April 16, 2026, in a good-faith effort to resolve this dispute without litigation, Mr. Ciepluch's counsel transmitted to Wantable's legal counsel, Attorney Stephen A. DiTullio of DeWitt LLP, a draft civil Complaint setting forth Mr. Ciepluch's claims for FMLA interference, FMLA retaliation, and breach of his Employment Agreement. That transmittal was made expressly for purposes of facilitating settlement discussions and constituted protected activity under both the FMLA and the WFEA. Wantable did not respond with any settlement overture.

47. Instead, the following day — April 17, 2026 — Wantable filed a civil lawsuit against Mr. Ciepluch personally in the Milwaukee County Circuit Court, Case No. 2026CV003644 (the "State Action"), one day after receiving Mr. Ciepluch's draft complaint and within forty-two days of his ERD complaint filing.

48. In the State Action, Wantable expressly relies upon Mr. Ciepluch's protected absences and alleged reduced engagement during September through October 2025 as the factual predicate for its claims of breach of contract, breach of fiduciary duty,

unjust enrichment, and fraudulent inducement, and seeks disgorgement of all compensation paid to Mr. Ciepluch during that period.

49. Specifically, Wantable's State Action Complaint identifies the following absence dates as evidence of Mr. Ciepluch's alleged breach of his Employment Agreement: September 24, 2025; October 14, 2025; October 15, 2025; October 21, 2025; October 24, 2025; and October 27–29, 2025. Wantable alleges that Mr. Ciepluch's absences on these dates constituted a breach of Section 1.1 of the Employment Agreement (80% in-person requirement) and Section 1.2 (best-efforts clause), and seeks $145,833.33 in disgorgement of compensation paid during September through November 2025 on that basis. Notably, the dates of October 27-29, 2025 were dates that Mr. Ciepluch was on approved FMLA leave.

50. The absences identified by Wantable were not breaches of the Employment Agreement. They were the direct manifestation of Mr. Ciepluch's serious health condition and disability for which he was entitled to FMLA protection and accommodation for his disability. Wantable's own State Action Complaint acknowledges that CEO Getz was aware of Mr. Ciepluch's condition during this period and "encouraged" him to apply for FMLA leave. The absences occurring in the weeks immediately preceding formal FMLA certification — during the period when Mr. Ciepluch's qualifying condition was actively developing and he had provided actual notice of his inability to perform — constitute

FMLA-qualifying absences for which the FMLA's protections apply. *See* 29 C.F.R. § 825.301(b).

51.     The FMLA expressly prohibits an employer from using an employee's exercise of FMLA rights "as a negative factor in employment decisions." 29 C.F.R. § 825.220(c). By filing the State Action and asserting that Mr. Ciepluch's FMLA-protected and FMLA-qualifying absences constituted breaches of his Employment Agreement warranting disgorgement of compensation, Wantable has used Mr. Ciepluch's exercise of FMLA rights as a negative factor in an employment action in direct violation of 29 U.S.C. § 2615(a)(1) and 29 C.F.R. § 825.220(c).

52.     Wantable's attempt to claw back $145,833.33 in compensation paid during FMLA-protected or FMLA-qualifying leave, on the ground that Mr. Ciepluch was absent or disengaged during that period, would effectively penalize Mr. Ciepluch monetarily for exercising the statutory leave rights to which he was entitled, rendering those rights illusory in violation of the express purposes of the Act.

### K.     Termination and/or Constructive Discharge.

53.     As a direct result of Wantable's conduct — including the elimination of his contractual salary during leave, the "fund your own salary" demand, the "Homework" email imposing executive-level deadlines during protected leave, the pressure to work, the hostile and demeaning communications from Mr. Getz, the false accusations of "anger and hostility," the retroactive key-employee designation, and the conditioning of

return on acceptance of professionally untenable and reputationally harmful terms — Mr. Ciepluch's working conditions became objectively intolerable.

54. Wantable's conduct caused Mr. Ciepluch's termination and/or constructive discharge on or about November 16, 2025. The conditions created by Wantable were so intolerable that a reasonable person in Mr. Ciepluch's position — a senior executive on approved medical leave for anxiety and depression, whose contractual salary was eliminated, who was shown a termination list with his name on it, who was falsely accused of Company failures, and who was required to serve as a public scapegoat for Company-driven layoffs as a condition of return — would have reasonably felt compelled to end the employment relationship.

55. In the alternative, Wantable's conduct in restoring Mr. Ciepluch's title on January 14, 2026, without remedying the unlawful conditions that caused his termination and/or constructive discharge, created conditions under which Mr. Ciepluch reasonably could not return. Wantable's failure to remediate those conditions constitutes a continuing FMLA violation.

**L. Retaliation.**

56. Mr. Ciepluch engaged in activity protected by the FMLA by: (a) exercising his right to take approved FMLA leave; (b) requesting extensions of that leave supported by medical certifications; (c) opposing Wantable's unlawful pressure to perform work during protected leave and its elimination of his contractual salary; (d) sending a written

protest email on November 19, 2025 asserting that Wantable's conduct constituted a breach of his Employment Agreement and termination and/or constructive termination; (e) filing the ERD complaint on March 6, 2026; and (f) through his legal counsel, transmitting a draft civil Complaint to Wantable's counsel on April 16, 2026 in a good-faith effort to resolve this dispute.

57. In direct response to Mr. Ciepluch's exercise of protected rights, Wantable filed the State Action against Mr. Ciepluch personally on April 17, 2026 — one day after receiving Mr. Ciepluch's draft civil complaint and forty-two days after his ERD complaint — seeking over $1,000,000 in personal damages, rescission of his Employment Agreement, and disgorgement of compensation, including salary paid during FMLA-protected periods.

58. The State Action is materially deficient and would not have been filed absent retaliatory motive. The fraudulent inducement claim fails to identify any specific false statement of fact and is based on an unlawful theory that Mr. Ciepluch was required to disclose a disability that he was not required to disclose. The tort claims are barred by Wisconsin's economic loss doctrine. The breach of contract damages theory relies on FMLA-protected absences as its predicate. The State Action was filed for the improper purpose of penalizing Mr. Ciepluch for exercising his statutory rights and deterring him from pursuing his claims.

59. The filing of the State Action constitutes an adverse employment action that would dissuade a reasonable employee from making or supporting a charge of discrimination or exercising FMLA rights. *See Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

**M. Breach of Employment Agreement – Failure to Pay Severance.**

60. Section 7 of the Employment Agreement provides that if Wantable terminates Mr. Ciepluch's employment without Cause, Wantable shall pay Mr. Ciepluch twelve months of continued base salary at $500,000.

61. Wantable terminated and/or constructively terminated Mr. Ciepluch's employment through its FMLA interference, salary elimination, imposition of untenable return conditions, hostile communications, false accusations, and improper key-employee designation, as described above. Constructive discharge constitutes a termination for purposes of contractual severance obligations under Wisconsin law.

62. Wantable's termination of Mr. Ciepluch's employment was not for Cause as defined in Section 6.1 of the Agreement. The constructive discharge of an employee on FMLA leave as a result of the employer's own unlawful conduct does not constitute Cause under any reasonable construction of the Agreement.

63. Wantable has failed and refused to pay Mr. Ciepluch the severance compensation required by Section 7 of the Agreement in the amount of $500,000, constituting a material breach of the Employment Agreement.

64. As a direct and proximate result of Wantable's breach, Mr. Ciepluch has been damaged in the amount of $500,000, representing twelve months of base salary severance, plus pre- and post-judgment interest, attorneys' fees, and costs.

**FIRST CLAIM FOR RELIEF**
**INTERFERENCE WITH FMLA LEAVE ENTITLEMENT**
29 U.S.C. § 2615(a)(1)

65. As and for his First Claim for Relief, Mr. Ciepluch re-asserts the allegations recited above and fully incorporates those paragraphs herein by reference.

66. At all relevant times, Mr. Ciepluch was an eligible employee under the FMLA, having been employed by Wantable for more than twelve months and having worked more than 1,250 hours in the preceding twelve-month period.

67. Mr. Ciepluch suffered from a serious health condition — anxiety and depression — that rendered him unable to perform the functions of his position, entitling him to FMLA leave pursuant to 29 U.S.C. § 2612(a)(1)(D).

68. Wantable interfered with, restrained, and denied Mr. Ciepluch's exercise of his FMLA rights by: (a) pressuring him to perform executive-level work during approved FMLA leave; (b) unilaterally eliminating his contractual salary and instituting zero-base incentive-only compensation during his leave; (c) conditioning reinstatement on performing inherently demeaning and reputationally harmful acts unrelated to legitimate business needs; (d) assigning executive-level deadlines and work tasks via the November 30 "Homework" email during leave; (e) issuing an improper retroactive key-

employee designation six weeks into his leave in violation of 29 C.F.R. §§ 825.217–825.219; (f) using hostile, demeaning, and retaliatory communications directed at Mr. Ciepluch's leave-related conduct, including the false December 2 accusation of "anger and hostility" made contemporaneously with approval of his FMLA extension; and (g) filing the State Action, which expressly characterizes Mr. Ciepluch's FMLA-protected and FMLA-qualifying absences as breaches of contract and seeks disgorgement of compensation paid during those protected periods, in violation of 29 U.S.C. § 2615(a)(1) and 29 C.F.R. § 825.220(c).

69. As a direct and proximate result of Wantable's FMLA interference, Mr. Ciepluch suffered damages including lost wages, lost employment benefits, lost severance compensation, emotional distress, attorneys' fees and costs incurred in defending the State Action, and other economic and non-economic harm.

70. Plaintiff further requests that this Court declare that Mr. Ciepluch's FMLA-protected and FMLA-qualifying absences may not be used as a negative factor in any employment action against him, and enjoin Wantable from pursuing any claim in the State Action premised upon those absences.

## SECOND CLAIM FOR RELIEF
## RETALIATION FOR EXERCISING FMLA RIGHTS
29 U.S.C. § 2615(a)(2)

71. As and for his Second Claim for Relief, Mr. Ciepluch re-asserts the allegations recited above and fully incorporates those paragraphs herein by reference.

72. Mr. Ciepluch engaged in activity protected by the FMLA, including taking approved FMLA leave, requesting extensions, opposing Wantable's unlawful interference, sending a written protest on November 19, 2025, filing the ERD complaint on March 6, 2026, and transmitting a draft civil complaint to Wantable's counsel on April 16, 2026.

73. Wantable retaliated against Mr. Ciepluch for exercising his FMLA rights by: (a) terminating his employment and/or constructively discharging him through the intolerable conditions created by its FMLA interference, salary elimination, false accusations, and hostile communications; and (b) filing the State Action against him personally one day after receiving his draft civil complaint and forty-two days after his ERD complaint, seeking over $1,000,000 in personal damages — including disgorgement of compensation paid during his FMLA leave — as direct punishment for his exercise of statutory rights.

74. There is a direct causal connection between Mr. Ciepluch's protected activity and Wantable's retaliatory conduct, evidenced by: (a) the extremely close temporal proximity between his protected activity and the filing of the State Action; (b)

Wantable's actual knowledge of his protected activity at the time the State Action was filed; (c) the pattern of escalating adverse actions beginning immediately upon Mr. Ciepluch's exercise of FMLA rights, including the false accusation of "anger and hostility" issued the same day as his FMLA extension approval; and (d) the pretextual and legally deficient nature of the State Action claims, including the use of FMLA-protected absences as the predicate for breach of contract allegations.

75. As a direct and proximate result of Wantable's retaliation, Mr. Ciepluch has suffered damages including lost wages, lost employment benefits, lost severance compensation, attorneys' fees and costs incurred in defending the State Action, emotional distress, and other economic and non-economic harm.

## THIRD CLAIM FOR RELIEF
## BREACH OF EMPLOYMENT AGREEMENT – FAILURE TO PAY SEVERANCE
(Supplemental Jurisdiction, 28 U.S.C. § 1367)

76. As and for his Third Claim for Relief, Mr. Ciepluch re-asserts the allegations recited above and fully incorporates those paragraphs herein by reference.

77. The Employment Agreement dated August 27, 2025 constitutes a valid and enforceable contract between Mr. Ciepluch and Wantable.

78. Mr. Ciepluch performed his obligations under the Employment Agreement. To the extent Mr. Ciepluch was unable to perform specific duties during his FMLA leave or the FMLA-qualifying period immediately preceding it, such non-performance was excused by law and by Wantable's own FMLA interference.

79. Wantable materially breached the Employment Agreement by terminating and/or constructively terminating Mr. Ciepluch's employment without Cause through its pattern of FMLA interference, salary elimination, false accusations, and hostile conduct, and by failing and refusing to pay Mr. Ciepluch the severance compensation required by Section 7 of the Agreement in the amount of $500,000.

80. As a direct and proximate result of Wantable's breach, Mr. Ciepluch has suffered damages in the amount of $500,000, representing twelve months of contractual severance, together with pre- and post-judgment interest, attorneys' fees, and costs.

**WHEREFORE**, Plaintiff Tyson A. Ciepluch demands relief as follows:

A. Judgment declaring that the actions of Defendant described herein violated Plaintiff's rights under the FMLA, 29 U.S.C. §§ 2615(a)(1) and 2615(a)(2);

B. A declaration that Plaintiff's FMLA-protected and FMLA-qualifying absences may not be used as a negative factor in any employment action against him, and an injunction prohibiting Defendant from pursuing any claim in Milwaukee County Circuit Court Case No. 2026CV003644 premised upon those absences;

C. Judgment ordering Defendant to pay all wages, employment benefits, and other compensation lost by reason of Defendant's FMLA violations, including the contractual severance of $500,000 wrongfully withheld, pursuant to 29 U.S.C. § 2617(a)(1)(A);

D.      Judgment against Defendant awarding Plaintiff liquidated damages equal to the sum of the damages described above, pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

E.      Judgment against Defendant on the breach of contract claim, awarding Plaintiff the contractual severance of $500,000 together with pre- and post-judgment interest at the statutory rate;

F.      Judgment against Defendant awarding Plaintiff his costs, disbursements, prejudgment interest, and actual attorneys' fees incurred in prosecuting this action and in defending the retaliatory State Action, pursuant to 29 U.S.C. § 2617(a)(3);

G.      Such other and further relief as the Court deems just and equitable.


Dated this 3rd day of June 2026.


*Electronically signed by Robert M. Mihelich*
Robert M. Mihelich
State Bar No. 1022106
Law Office of Robert M. Mihelich
2665 S. Moorland Road, Suite 200
New Berlin, Wisconsin 53151
(262) 789-9300
(262) 785-1729 (fax)
attyrmm@bizwi.rr.com

**Attorney for Plaintiff Tyson A. Ciepluch**